The opinion of the court, Duncan, J., being absent, was delivered by
Gibson, C. J.
As the Orphans’ Court has jurisdiction of the subject matter of distribution, it may designate the parties entitled, *37 and its decree will be conclusive. But so unusual is it to do so at the settlement, that I have never known an instance. The usual way is to confirm the account, stating the balance, where there is any, to be in the hands of the accountants, subject to distribution according to law. And this is the safest course where there is a doubt as to the persons entitled, because it leaves the matter open to deliberate-inquiry in an action at law, instead of suddenly concluding by a decree the rights of parties who' are not before the court and who seldom have actual notice. The Orphans’ Court, however, would be bound to act on the petition of any one interested; but, in such case, it ought to exact all that the nature of the case admits of to give notice; and, even then, I would not hold myself concluded, unless it should appear to have actfed on the whole subject. What is there here in the shape of a decree? We have a paper in the handwriting of the president, in which it is decided that distribution be-made per capita; the conclusion of which is in these words: “The court, therefore, decree that distribution be made among all the persons named, they being cousins, and in equal degree to the iiitestate.” Now, no persons were named except in two other papers in- the handwriting of counsel, found tacked to the opinion of the president, each of which appears to have been presented separately as the basis of a decree: in one of which are found names of ten persons who were defendants in a feigned issue between them and an entirely different set of claimants; by which, if it were assumed as the basis, the present plaintiff would be excluded; and in the other eleven are named, among whom the plaintiff is included. Endorsed on what is called the decree, are the names and supposed shares of the ten persons who constituted the successful party in the feigned issue; bbt so far is this from having been the act of the court, that it is conceded on all hands to have been a memorandum of counsel, and made several months after the paper was filed. The reference, therefore, if it be to these papers, is altogether uncertain; and if it be not, it is a reference to nothing. The paper was no doubt intended as a memorandum of the opinion of the court as to the principle of the decree, leaving its détails to the counsel and the clerk when it'should come to be made up in form and entered on the record. The late President Hamilton, who was one of the ablest and most careful-judges of the Orphans’ Court of whom I have any knowledge, would never have considered his decree perfected by filing a paper such as this; from which it is evident that he viewed the matter before him as a preliminary question; and that he did not consider himself as deciding between individuals, but classes. But, were this otherwise, the decree would indisputably be void for uncertainty.
But, were it even conclusive, the defendants ought to have been permitted to show that the plaintiff was not entitled under it; and *38 this, either on the plea of nil debet, which was already on the record, or the special plea which they tendered at the trial, and which by force of the act of assembly was clearly admissible. It did not propose to give the plaintiff a better writ, but to bar him of his demand. The defendants pleaded that the plaintiff’s intestate was not the John Mexander mentioned in the decree; and if this be in abatement, it would be equally so in an action on a bond to plead that the plaintiff and the obligee are different persons. The error in this respect is palpable; but on both grounds the judgment is to be reversed.
Huston, J.
There are some things unusual in this case. The case was before the Orphans’ Court of this county. That court alone can decide who are the persons entitled to distribution of the estate of an intestate, and the amount due to each; this, by the express words of the bond in the first section of the act of 1794, and the concluding clause of the said section, and by every clause and section in the act which have any bearing on the subject: this is subject to appeal, and no other court'has jurisdiction of this matter. • The Orphans’ Court of this county had.two sets of claimants before them; one set who alleged the intestate to have been their kinsman; another, of a different family, from another part of Ireland, claiming him to have been of their family. An issue was found and tried, taken to the Supreme Court, and affirmed. It is singular that the order for this issue and the whole record are not now to be found. Who directed the trial, and what was to be tried by that direction, we must collect from parol proof, or from inference from some things which do appear.
After this trial one set of claimants disappears; the other comes into the Orphans’ Court and claims the estate. At first a scheme of división into five parts, dividing it per stirpes, was submjtted to the Orphans’ Court:, in this the defendants in the feigned issue, are all named, and one other is named, or the name of John Alexander is twice introduced.
This mode of division was not adopted by the court; but the paper on which it is drawn up is found in the office of the Orphans’ Court, and is annexed to the following paper; commencing, “'The defendants in the feigned issue, who represent the intestate, submit to the court to decree in what manner distribution shall be made. John Mexander, the intestate, died since 1794.” And then proceeds to name all the defendants in the feigned issue, and states their pedigree, showing them to be the children of the uncles of the intestate, and that the uncles are all dead. The Orphans’ Court made a decree, in which, after premising the facts, they say, “ The court, therefore, decree distribution of the intestate’s estate to be made among all the persons named, they being cousins and being in equal degree with the intestate.”
*39 The administrators had settled their accounts, and the amount was known. On the.back of the paper on which the decree is written, was endorsed — u Distribution according to the within decree, as follows:—
“John Jllexander, one share, one thousand three hundred and twenty dollars and seventy-eight cents,” and the same as to nine other names, being the names of the defendants in the feigned issue, and in the paper submitted to the court. This endorsement was in the handwriting of a gentleman of the bar who was counsel for the administrators. I consider this an absolute, and, being unappealed from, final decree of the Orphans’ Court, deciding the persons entitled, and the sums to which each was entitled.
1. The objections to it are, that we have not the records of the feigned issue. I think we have enough to show that it was directed by the court; and what it was to decide, and did decide, and that it was adopted by the court. If we have not, we have a decree, independent of the feigned issue before us.
2. It is objected, that as two schemes of division were before the court, and in one of them eleven persons were named, and in the other ten, and as both have been put in the bundle of papers, it is uncertain which number the court had in view in the decree. I have no difficulty on this subject. The court adopted one of them; that which referred to the feigned issue, and it would be strange to suppose the phrase, the persons named, referred to a rejected paper.
3. The distribution endorsed, and the names of the ten, and sum to each, is not in the handwriting of the judge who wrote the decree, but of a gentleman of the bar. 1, however, consider it as the act of the judge, done as it were by his clerk, a reader accountant and scribe, as read to him when completed and adopted by the Orphans’ Court, and from that moment their own act. The general practice is, that when the account is passed the court order “ distribution to those entitled according to law.” This is the minute on the account. The clerk of the Orphans’ Court, however, in all cases so far as I have known, writes on the record of the Orphans’ Oourt at length the names of the distributees, and the sum due to each. This is done in the presence of the administrators, and is considered the act of the court, as such made out when a copy of the record is called for. In ordinary cases where parties live in the county, no difficulty arises or can arise: if the clerk has not leisure at the moment, he takes a memorandum of the names and makes the calculation, and completes the record at his leisure. Unfortunately in this case no record was ever made; all is y.et on loose paper; still I consider this the decree of the court, made out, adopted, and decreed by them; for no human being who knows him who made it, can surmise it was done in any other way than as I have stated it; that is, to relieve the court from the labour of *40 calculation and writing, and shown to them. But, if under our practice this was not conclusive, or for any of the above reasons should not be held so, after the lapse of time it ought to be prima facie evidence. John Alexander left Ireland in 1774; to bring proof by persons who knew him is not to be expected; witnesses who did not know him cannot tell who were his relations; we may as well give the estate to those in whose hands it is. The decree was made in 1812; the administrators have acted on it, paid some of the persons, and paid the expenses of feigned issues and -the counsel of the defendants. It is too late for them to deny there is a decree.
By our law a man may put in a plea after the jury have been sworn, and ii1 the other party is surprised and wishes time to meet it, the jury are dismissed, (on payment of costs by the party putting in the new plea in some districts;.), this being by positive enactment, it is error to refuse such plea unless it is plainly frivolous or totally inconsistent with former pleas, (as non est factum, after another plea which expressly admitted the execution of the instrument and avoided the effect of it.) This case is singularly circumstanced; the distributees all live or did live in Ireland. The plaintiff sues as administrator of John Alexander. The defendant may put him to prove that the John Alexander, whom he represents, was the són of Hugh Alexander, of the parish of-, in the county of-:-, and the brother of Mrs. Jamieson, Mrs. Stewart, and Mrs. Gilleland, named in the feigned issue, and in the paper on which the decree is founded.
There was then error in this; and also in refusing to permit the defendants to prove that the plaintiff’s intestate was not the son of Hugh Alexander, and not the John Alexander named in the feigned issue and the paper before-mentioned.
Gibson, C. J., delivered the opinion of the majority; Duncan, J., and Tod, J., took no part
Judgment reversed, and a venire facias de novo awarded.